Daniel J. Herling (SBN 103711)
djherling@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone: 415-432-6000
Facsimile: 415-432-6001

Arameh Z. O'Boyle (SBN 239495)
azoboyle@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

Leigh E. Colihan (*admitted pro hac vice*)
lecolihan@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: 617-542-6000
Facsimile: 617-542-2241

Attorneys for Defendant Benihana, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOUNGSUK KIM, an individual, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>BENIHANA, INC.; and DOES 1-100, inclusive<br><br>Defendant. | Case No. 5:19-cv-02196-JWH-KKx<br><br>**REPLY IN SUPPORT OF DEFENDANT BENIHANA, INC.'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S RETAINED EXPERT, ERIC F. FORISTER, PH.D., UNDER FED. R. EVID. 702**<br><br>Date:   December 17, 2021<br>Time:   9:00 a.m.<br>Ctrm.:   2<br>Judge:   Hon. John W. Holcomb<br><br>Complaint filed September 26, 2019<br>Trial Date: None Set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................5

II. PLAINTIFF APPLIES AN INCORRECT LEGAL STANDARD.................6

III. THE FORISTER REPORT IS INADMISSIBLE UNDER RULE 702..........7

    A. Dr. Forister's Opinions Are Unreliably Based on Junk Science, Unhelpful to the Trier of Fact, and Should Be Excluded ......................7

        1. Dr. Forister Cannot Blindly Rely on Inaccurate Data ................8

        2. Dr. Forister Ignores Dr. Maronick's Inconsistent Survey Results ........................................................................................9

    B. Dr. Forister's Restitution Damages Can be Measured by a Layperson ..............................................................................................11

    C. Benefit-of-the Bargain Damages Lack Any Economic Basis to Support Plaintiff's Allegations............................................................12

    D. Although Cost-Savings Has Been Withdrawn, Its Inclusion in the Forister Report Demonstrates the Report's Lack of Probative Value ....................................................................................15

IV. CONCLUSION ............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States*,
    483 U.S. 171 (1987) ................................................................................ 6

*Cholakyan v. Mercedes-Benz, USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) ........................................................ *passim*

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ..................................................... 13, 14

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................ *passim*

*E&J Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ............................................................ 10

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................... 6, 7

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ..................................................... 10, 11

*Fosmire v. Progressive Max Ins. Co.*,
    277 F.R.D. 625 (W.D. Wash. 2011) ..................................................... 8

*Grodzitsky v. Am. Honda Motor Co.*,
    957 F.3d 979 (9th Cir. 2020) ............................................................... 6

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ......................................................... 8

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................. 14

*In re Imperial Credit Indus., Inc. Securities Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) ............................................... 8

*In re Qualcomm Antitrust Litigation*,
    No. 17-MD-02773-LHK (N.D. Cal. Sept. 27, 2018) ......................... 14

3

REPLY IN SUPPORT OF DEFENDANT BENIHANA, INC.'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S RETAINED EXPERT, ERIC F. FORISTER, PH.D., UNDER FED. R. EVID. 702

*Kanellakopoulos v. Unimerica Life Ins. Co.*,
   No. 15-CV-04674-BLF, 2018 WL 984826 (N.D. Cal. Feb. 20, 2018) .............. 12

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ................................................................................ 6

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) .............................................................................. 8

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) .............................................................................. 6

*Southland v. Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .......................................................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
   No. C 17-00939 WHA, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) .............. 12

**Rules**

Fed. R. Evid. 104 ........................................................................................................ 6

Fed. R. Evid. 702 ............................................................................................... *passim*

Fed. R. Evid. 703 ........................................................................................................ 5

## I. INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Exclude the Opinions of Eric F. Forister, Ph.D. misses the point. Dkt. No. 110 ("Opp'n"). It is the sufficiency of the basis of Dr. Forister's opinions that is at issue under Rule 702.[1] The Forister Report must be excluded because it is blindly premised on faulty survey results summarized by Dr. Maronick, which Dr. Forister admits were "critical" to his analysis. Forister Report at 12 ("I use the results of Dr. Maronick's survey to obtain information on two things *critical to my analysis*…") (emphasis added). Dr. Forister testified that he did not review the data from Dr. Maronick's survey, but rather, relied on Dr. Maronick's summary interpretation of that data – i.e., his conclusions. *Id.*[2] However, an expert cannot blindly rely on the opinions of other experts absent safeguards to ensure their reliability. Dr. Forister did not even request access to the raw data of Dr. Maronick's Report to understand the percentages that were so "critical" to his analysis. Consequently, the purported methods for calculating damages proffered by Dr. Forister are rendered inadmissible given their reliance on the hopelessly flawed survey results provided by Dr. Maronick – *junk in equals junk out*. The Court should therefore enforce its gatekeeping function to exclude the unreliable and irrelevant damages calculations presented in the Forister Report.

---

[1] *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("the question whether the expert is relying on a *sufficient* basis of information—whether admissible information or not—is governed by the requirements of Rule 702" as opposed to the "reasonable reliance" requirement of Rule 703).

[2] Declaration of Leigh E. Colihan in Support of Defendant's Motion to Exclude Opinions of Plaintiff's Retained Expert, Eric F. Forister, Ph.D., Dkt No. 101-2 ("Colihan Decl."), ¶ 2, Ex. A (Forister Dep. 15:8-19).

## II. PLAINTIFF APPLIES AN INCORRECT LEGAL STANDARD

Plaintiff bears the burden of proving by a preponderance of the evidence that his proffered expert opinions meet the admissibility requirements under Fed. R. Evid. 702. *See Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n.10 (1993) ("*Daubert*") (discussing applicability of Federal Rule of Evidence 104(a) to expert testimony and citing *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987), for preponderance standard); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Plaintiff sidesteps this important responsibility and inaccurately frames the legal standard applicable to this motion, citing *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ("*Sali*") for his position that "the Court may not make determinations of admissibility or inadmissibility under *Daubert* at the class certification stage." Opp'n at 1. Plaintiff is wrong. The Ninth Circuit in *Sali* held that standards of admissibility remain applicable for purposes of class certification. *Sali*, 909 F.3d at 1006. "***Indeed, in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in* Daubert.**" *Id.* (emphasis added).

It is incumbent upon a district court to "act as a 'gatekeeper' to exclude junk science that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable" and relevant. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (holding "the district court correctly applied the evidentiary standard set forth in *Daubert*" at the class certification stage) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 145, 147–49 (1999)); *see also Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 541 (C.D. Cal. 2012) ("[T]he Ninth Circuit approved the application of *Daubert* to expert testimony presented in support of or opposition to a motion for class certification.") (citing *Ellis*, 657 F.3d at 982); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 987 (9th Cir.

2020) (district court properly performed its gatekeeping function excluding the expert's proffered opinion at the class-certification stage using *Daubert* factors for its analysis and concluding that the opinion was not predicated on reliable scientific methodology).

Under Rule 702, testimony of an expert in the form of an opinion is only admissible if it satisfies several criteria, including (1) they are "qualified as an expert by knowledge, skill, experience, training, or education," (2) the opinion is helpful to the trier of fact, is based on sufficient facts or data, and is the product of reliable principles and methods, and (3) the expert has reliably applied those principles and methods to the facts of the case. FED. R. EVID. 702. Plaintiff has failed to meet this burden.

## III. THE FORISTER REPORT IS INADMISSIBLE UNDER RULE 702

### A. Dr. Forister's Opinions Are Unreliably Based on Junk Science, Unhelpful to the Trier of Fact, and Should Be Excluded

Plaintiff attempts to admit the Forister Report to support his theory of class-wide damages, including models for benefit-of-the-bargain damages and refund of the purchase price. Opp'n at 2-3. However, "[b]efore admitting expert testimony, the trial court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' [Citations.] In conducting this preliminary assessment, the trial court is vested with broad discretion." *Cholakyan*, 281 F.R.D. at 542–43; *see also Ellis*, 657 F.3d at 982 ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable"). The opinions in the Forister Report should be excluded because they fail to meet the baseline requirements of reliability and relevance.

### 1. Dr. Forister Cannot Blindly Rely on Inaccurate Data

The Forister Report should be excluded because it is built on unreliable survey results summarized in the Maronick Report. The inferential leaps and unsupported assumptions asserted by Dr. Maronick form the basis of Dr. Forister's opinions. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806–07 (9th Cir. 1988) (affirming exclusion of "hopelessly flawed" expert report on damages because it "rests on unsupported assumptions and ignores distinctions crucial to arriving at a valid conclusion").

While an expert "can appropriately rely on the opinions of others," there must be other evidence to support that opinion and a demonstration in the record that the expert conducted an independent evaluation. *Cholakyan*, 281 F.R.D. at 544 (excluding in part expert's declarations for unreliability where expert parroted another expert's evaluation and did not conduct his own assessments); Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[t]he term 'data' is intended to encompass the *reliable* opinions of other experts") (emphasis added). "An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014); *see, e.g.*, *Fosmire v. Progressive Max Ins. Co.,* 277 F.R.D. 625, 629 (W.D. Wash. 2011) ("Dr. Polissar's expert report is deficient in several ways. First, although his opinions are based on Dr. Siskin's data and methodology, there is nothing in the record to indicate that Dr. Polissar has tested Dr. Siskin's underlying data to ensure its reliability or that Dr. Polissar even has access to Dr. Siskin's underlying data"); *In re Imperial Credit Indus., Inc. Securities Litig.,* 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation").

Serious reliability issues plague the Forister Report. An independent assessment of Dr. Maronick's findings was not undertaken. Dr. Forister testified that he did not

even request access to the "raw" or underlying survey data to independently assess whether Dr. Maronick's conclusions were accurate. Colihan Decl., ¶ 2, Ex. A (Forister Dep. 15:8-19, 42:1-43:15, 50:11-51:18) ("**Q.** What do you mean by 'raw data that supports an economic or consumer perception survey'? **A.** When I use the term 'raw data,' it would mean the – the spreadsheet, responses from each respondent to each question. **Q.** Okay. So using your definition, have you ever reviewed any raw data that supports the report of Mr. Maronick? **A.** No.")  No amount of cross-examination of Dr. Forister's methodologies can overcome the fundamental problem he created when he blindly accepted Dr. Maronick's junk survey results to establish his damages models.

Dr. Maronick's survey results are "critical" to Dr. Forister's analysis, yet he did not even request access to the responses from survey respondents to verify if Dr. Maronick's findings were correct or inflated.  Forister Report at 12.  In fact, Dr. Maronick's survey data contains glaring inconsistencies that Dr. Forister ignores because he failed to access or review any underlying responses.  As such, the Forister Report should be deemed inadmissible as lacking essential reliability safeguards.

**2. Dr. Forister Ignores Dr. Maronick's Inconsistent Survey Results**

Dr. Forister deliberately chose not to evaluate how Dr. Maronick arrived at his summary conclusions based on the survey respondent's raw data.  Colihan Decl., ¶ 2, Ex. A (Forister Dep. 15:8-9) ("**Q.** Okay. Did you read -- did you review the raw data behind the report? **A.** No. **Q.** Did you have access to that raw data? **A.** I had access to the finished report. I think the report, if I recall, it included a summary of the data, and that was what I had access to. **Q.** All right. Did you ask for the raw data? **A.** No. **Q.** Why not? **A.** I didn't need it.")  Instead, he relies solely on Dr. Maronick's "summary of the data" which is all he "had access to." *Id.*  Dr. Forister thus intentionally ignores

substantial inconsistencies in the survey responses that Dr. Maronick inaccurately characterized to advance Plaintiff's theory of the case.³

Dr. Forister uses the Maronick Report, including the survey responses Plaintiff and Dr. Maronick now seek to distance themselves from (Declaration of Thomas Maronick, DBA, JD ("Maronick Decl."), Dkt. No. 109-1), to obtain information on "what consumers believe about the crab content described in Benihana's actual menu." Forister Report at 12. Dr. Forister blindly relies on Dr. Maronick's results – despite substantial inconsistences – to utilize the weighted average percentage of 53.7% as a foundational input for his damages calculations. Forister Report at 12. He also relies on Dr. Maronick's results for consumer willingness-to-pay for "(i) the crab meat content they believed is described in the actual menu, and (ii) the actual crab meat content in the product." *Id.* at 12-13. However, because these results are derived from summaries of inconsistent inputs, the proposed damages models should be excluded as fundamentally unreliable under Rule 702.

This Rule 702 challenge goes beyond an attack on the weight the Court should give to the Maronick Report (and by correlation, the Forister Report).⁴ The Court's

---

³ In addition to the inconsistencies set forth in Defendant's Motion to Exclude Opinions of Dr. Forister (Dkt. No. 101), Defendant further invites the Court and incorporates by reference its argument and identification of numerous other survey inconsistencies and illogical leaps taken by Dr. Maronick and Plaintiff in Defendant's concurrently-filed Motion to Exclude Opinions of Plaintiff's Retained Expert, Thomas J. Maronick, DBA, JD, Under Fed. R. Evid. 702.

⁴ The cases Plaintiff relies on for this weight versus admissibility distinction are inapposite. *See* Opp'n at 5-6 (citing *Southland v. Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 n.8 (9th Cir. 1997); *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992); and *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010)). *Southland* and *E&J Gallo Winery* pre-date the 2000 amendments to Fed. R. Evid. 702, which were implemented in response to *Daubert* and "requires that the testimony must be the product of reliable

1  gatekeeping function involves ensuring that an expert's opinion "rests on a reliable
2  foundation…." *Daubert*, 509 U.S. at 597. "While the credibility of 'shaky' expert
3  testimony is ordinarily a subject for cross-examination, 'the testimony proffered here
4  is not merely shaky: it is unreliable.'" *Cholakyan*, 281 F.R.D. at 547 & n.72 (quoting
5  *American Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010)) (excluding an
6  expert's declarations at class-certification stage because he offered "no evidence that
7  he used independent judgment in reaching the conclusions he offers"). Here, Dr.
8  Forister intentionally ignores glaring inconsistencies in Dr. Maronick's survey
9  responses, simply repeating Dr. Maronick's summary results without any independent
10 judgment of the veracity of those opinions. This unsubstantiated leap, in turn, renders
11 Dr. Forister's opinions inadmissible under Fed. R. Evid. 702.

### B. Dr. Forister's Restitution Damages Can Be Measured by a Layperson

Dr. Forister's restitution damages model is nothing more than a statement reciting a simple refund of the purchase price. Dr. Forister takes Benihana's net sales information from a single document and calculates a percent refund of either 25%, 50%, 75%, and 100% based solely on instruction from Plaintiff's counsel. Forister Report at 28-29, Ex. 13 (referencing "Source: BENI_00001403); Colihan Decl., ¶ 2, Ex. A (Forister Dep. 62:7-15). This is not a summary of voluminous sales data from multiple sources where an expert's opinion may be useful to the trier of fact. Tellingly, Plaintiff cites no case law from this district or the Ninth Circuit to support the

---

principles and methods that are reliably applied to the facts of the case." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. *Fortune Dynamic, Inc.* (although post-2000) relies on application of Fed. R. Evid. 702 in cases that pre-date the 2000 amendments.

11
REPLY IN SUPPORT OF DEFENDANT BENIHANA, INC.'S MOTION TO EXCLUDE
OPINIONS OF PLAINTIFF'S RETAINED EXPERT, ERIC F. FORISTER, PH.D., UNDER FED.
R. EVID. 702

admissibility of Dr. Forister's measure of refund damages. *See* Opp'n at 6-7 (citing only 8th Cir., E.D. Tenn., and D. Mich. case law).

In fact, Dr. Forister's restitution damages model is simple arithmetic that any layperson or factfinder can conduct on their own. Dr. Forister readily admitted this at his deposition: "**Q.** In Paragraph No. 9 -- I know it's divided into three parts. I just want to understand. Like 9(a), is this just an arithmetic analysis that you can -- you can multiply one number by a percentage and get a different number? **A.** It's a demonstration that that ***arithmetic calculation can be done simply***." Colihan Decl., ¶ 2, Ex. A (Forister Dep. 75:6-21) (emphasis added). This is not the proper subject of expert testimony and should be excluded. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 5148390, *5 (N.D. Cal. Nov. 6, 2017) ("Straightforward application of grade-school arithmetic to uncomplicated numbers is well within the ken of the average juror.") Dr. Forister's opinion adds no value beyond the common knowledge of the average layperson.

Adding to its lack of probative value, Plaintiff concedes that Dr. Forister made "certain assumptions regarding restitution damages[,]" presumably as to the percentages for the total refund provided by Plaintiff's counsel. Opp'n at 7. These percentages are not tethered to any of Plaintiff's allegations and rest on manufactured assumptions at the direction of Plaintiff's counsel, rendering the restitution damages opinion unreliable and inadmissible. *See Kanellakopoulos v. Unimerica Life Ins. Co.*, No. 15-CV-04674-BLF, 2018 WL 984826, at *6 (N.D. Cal. Feb. 20, 2018) (striking portion of expert opinion that was "grounded in [a] mistaken assumption" as unreliable).

### C. Benefit-of-the Bargain Damages Lack Any Economic Basis to Support Plaintiff's Allegations

Plaintiff cannot escape the fundamental flaws in Dr. Forister's "benefit-of-the-bargain" damages model, although he attempts to distract the Court by alleging

generally that there exists *some* viable damages calculation. Opp'n at 7. Importantly, Dr. Forister has not performed any such viable "benefit-of-the-bargain" calculation because he relies on faulty survey data and uses irrelevant inputs. The focus of the instant Motion to Exclude is the admissibility of the Forister Report under Rule 702 – that the opinion be relevant and reliable – not that there *may* exist some speculative theory of damages. A trial court "must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 597). Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline." *Id.* at 1044. In turn, testimony is "relevant" if the knowledge underlying it has a "valid connection to the pertinent inquiry." *Id.* at 1044.

First, as previously stated, the "benefit-of-the-bargain" damages model from the Forister Report does not rest on a reliable foundation. Dr. Forister uses a weighted average of 53.7% derived from Dr. Maronick's faulty summary conclusions. Forister Report at 23. This input is "critical to [his] analysis" but was not verified by Dr. Forister. *Id.* at 12. Plaintiff argues that Dr. Forister was not required to "verify independently the raw data," (Opp'n at 9) but Plaintiff also fails to proffer any evidence that Dr. Forister used his independent judgment in analyzing this survey data so as to enable him to rely on it for such a critical component of this damages calculation. *See Cholakyan*, 281 F.R.D. at 547 & n.72 (excluding an expert's declarations at class-certification stage because he offered "no evidence that he used independent judgment in reaching the conclusions he offers"). And it is Plaintiff's burden to prove by a preponderance of the evidence that his proffered expert opinion meets Rule 702's admissibility standards. *Daubert*, 509 U.S. at 593 n.10. Plaintiff's failure to meet this burden is a fatal blow to Dr. Forister's purported damages opinion.

Second, it is undisputed that Dr. Forister does not use any Benihana Food Products in his hedonic price regression or in developing his price premium. *See* Opp'n at 9. Thus, Dr. Forister's price premium lacks a "valid connection to the pertinent inquiry" and is not tethered to Plaintiff's allegations in this case. *See City of Pomona*, 750 F.3d at 1044. This omission is critical to the relevancy and probative value of Dr. Forister's purported "benefit-of-the-bargain" damages.

At a minimum, Dr. Forister could have included Benihana prices in assessing the price premium for sushi rolls using imitation crab—he did not do so. Furthermore, the single case cited by Plaintiff to support Dr. Forister's use of the hedonic price regression is an example where the expert uses a data set that includes *both* the challenged products at issue and a set of comparable products in the marketplace. *See* Opp'n at 9-10 (citing *Hadley v. Kellogg Sales Company*, 324 F. Supp. 3d 1084, 1111 (N.D. Cal. 2018) (expert ran "his hedonic regression using a 'dataset [that] includes' both the challenged Kellogg products and a set of comparable breakfast products from 16 other 'major brands'")). Here, Dr. Forister made no attempt to include Benihana prices from the challenged Food Products in his hedonic price regression, which renders it irrelevant and inadmissible under Rule 702.[5]

Third, Plaintiff conflates the issues involved in this food labeling case. Simply stated, the menu label for the California Roll is not the same as the menu label for the other Food Products. It does not matter whether or not the products "are all

---

[5] Moreover, the cases cited directly in the Forister Report support hedonic price regressions when used *in conjunction with* a conjoint analysis. Forister Report at 19-20, n.92 (citing *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015); *In re Qualcomm Antitrust Litigation*, No. 17-MD-02773-LHK (N.D. Cal. Sept. 27, 2018). As Dr. Maronick has testified, he did not perform a conjoint analysis for the consumer survey in this case. Declaration of Leigh E. Colihan in Support of Defendant's Motion to Exclude Opinions of Plaintiff's Retained Expert, Thomas J. Maronick, DBA, JD, Dkt No. 100-2, ¶ 2, Ex. A (Maronick Dep. 30:7-15).

substantially similar multi-component imitation crab sushi rolls." Opp'n at 11. Dr. Forister's price premium values *only* the California Roll, which is one of ten Food Products at issue in this case. And critically, it is the single sushi roll labeled much different than the other Food Products, which all have ingredients listed including "crab(†)" while the California Roll does not. Trying to extrapolate Dr. Maronick's survey results focused on a completely different menu label for the Shrimp Crunchy Roll with price premium data for a California Roll has no relevance. The menu labels are distinctly different in content and context. Any application of Dr. Maronick's survey data for Shrimp Crunchy Rolls to a price premium for California Rolls is inapplicable and causes Dr. Forister's damages models to be pure speculation with no connection to the pertinent inquiry here.

### D. Although Cost-Savings Has Been Withdrawn, Its Inclusion in the Forister Report Demonstrates the Report's Lack of Probative Value

Recognizing the overwhelming authority against Dr. Forister's "cost-savings" model, Plaintiff now withdraws this theory of damages. Opp'n at 11 ("Plaintiff did not raise the cost-savings damages calculation in his motion"). Nonetheless, the "cost-savings" opinion remains part of the Forister Report and serves as the floor of damages that Plaintiff continues to cite in his framework of purported class-wide damages in this action. *Compare* Opp'n at 2 ("In his report, Dr. Forister opined that damages in this action range from $507,070.00 to $9,825,877.00, depending on the method of calculation used.") *with* Forister Report at 29 ("Cost-savings damages are between $507,070 and $610,224). Despite Plaintiff's about-face, the inclusion of an unsupported theory of damages in the Forister Report (performed solely at the direction of counsel) diminishes any probative value the Court may give to the Forister Report as proffered evidence and renders Dr. Forister's damages models inadmissible.

## IV.  CONCLUSION

For the foregoing reasons, Benihana respectfully requests that the Court exclude

Dr. Forister's report submitted as Exhibit M to the Yoon Declaration in support of Plaintiff's Motion for Class Certification under Federal Rule of Evidence 702.

Dated: November 30, 2021　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　MINTZ LEVIN COHN FERRIS
　　　　　　　　　　　　　　　　　　　　GLOVSKY AND POPEO, PC

　　　　　　　　　　　　　　　　　　　　By:　*/s/Daniel J. Herling*
　　　　　　　　　　　　　　　　　　　　　　　Daniel J. Herling
　　　　　　　　　　　　　　　　　　　　　　　Arameh Z. O'Boyle
　　　　　　　　　　　　　　　　　　　　　　　Leigh E. Colihan

　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　　　BENIHANA, INC.